FILED
U.S. DISTRICT COURT
UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LA

EASTERN DISTRICT OF LOUISIANA 2008 JUN 10 AM 11: 49

LORETTA G. WHYTE
CLERK

08-3675

NEXEN PETROLEUM U.S.A. INC.,          *        CIVIL ACTION NO. _____
ENERGY XXI GULF COAST, INC.,          *
WINN EXPLORATION COMPANY,             *
INC., STEPHENS PRODUCTION             *        JUDGE **SECT. C MAG 3**
COMPANY, LLC, RIVERFRONT              *
EXPLORATION, LLC, LOVELESS            *
ASSET MANAGEMENT, LLC,                *        MAGISTRATE JUDGE _____
COASTAL DRILLING COMPANY,
LLC, NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURG, PENNSYLVANIA,
MUNICH RE CAPITAL, LTD.,
LLOYD'S SYNDICATE NO. 457WTK,
LLOYD'S SYNDICATE NO. 510KLN,
ZURICH AMERICAN INSURANCE
COMPANY, ST. PAUL SURPLUS
LINES INSURANCE COMPANY,
CERTAIN UNDERWRITERS AND
COMPANIES AT LLOYD'S, LONDON
AND NATIONAL FIRE & MARINE
INSURANCE COMPANY AND
LIBERTY MUTUAL INSURANCE
COMPANY AND STATE NATIONAL
INSURANCE COMPANY


VERSUS


ALLIS-CHALMERS RENTAL
SERVICES, LLC, f/k/a ALLIS-
CHALMERS RENTAL SERVICES,
INC., f/k/a ALLIS-CHALMERS
RENTAL TOOLS, INC., and f/k/a OIL
& GAS RENTAL SERVICES, INC.,
ALLIS-CHALMERS ENERGY, INC.,
CAMERON INTERNATIONAL
CORPORATION f/k/a COOPER
CAMERON CORPORATION COOPER
OIL TOOL DIVISION, CAMERON

___ Fee $350
___ Process_____
_X_ Dktd _____
___ CtRmDep_____
___ Doc. No_____

Page 1

ELASTOMER TECHNOLOGY, A
DIVISION OF CAMERON
INTERNATIONAL CORPORATION,
CAMERON CONTROLS, A DIVISION
OF CAMERON INTERNATIONAL
CORPORATION, DRILLING
SYSTEMS, CAMERON, A DIVISION
OF CAMERON INTERNATIONAL,
CAMERON FRANCE, S.A.,
OPERATES AS A SUBSIDIARY OF
COOPER CAMERON HOLDING
(U.K.) LTD., COOPER CAMERON
HOLDING (U.K.) LTD., HYDRIL
COMPANY, LP., HYDRIL GENERAL,
LLC., IS A GENERAL PARTNER OF
HYDRIL COMPANY, L.P., TRI CITY
PIPE & MACHINE, LLC.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## **COMPLAINT**

Now into Court, through undersigned counsel, come Nexen Petroleum U.S.A.

Inc., Energy XXI Gulf Coast, Inc., Winn Exploration Company, Inc., Stephens

Production Company, LLC, Riverfront Exploration, LLC., Loveless Asset Management,

LLC, Coastal Drilling Company, LLC, National Union Fire Insurance Company of

Pittsburg, Pennsylvania, Munich Re Capital, Ltd., Lloyd's Syndicate No. 457 WTK and

Lloyd's Syndicate No. 510KLN subscribing severally, each for its proportionate share

and not one for the other to that insurance described in Burke-Daniels Cover Note No. A-

0588-PK6, Munich Re Capital, Ltd., Lloyd's Syndicate No. 457 WTK subscribing

severally, each for its proportionate share and not one for the other to that insurance

described in Policy No. FCGM0740504 and Zurich American Insurance Company, St.

Paul Surplus Lines Insurance Company subscriber to Policy No. MU05508234, St. Paul

Surplus Lines Insurance Company, subscriber to Policy No. MU05508674, Certain

Underwriters and Companies at Lloyd's, London, and National Fire & Marine Insurance Company, Zurich American Insurance Company and Liberty Mutual Insurance Company all of whom severally subscribe, each for its own proportionate share and not one for the other to Policy No. PEO601206, Policy No. PEO601207, Policy No. NRG913850-00, Policy No. 3H4679001, and Policy No. 92SRD102101, and State National Insurance Company, (hereafter sometimes referred to collectively as "Plaintiffs") and for their Complaint against defendants, aver as follows:

1.

Plaintiffs invoke the admiralty and maritime jurisdiction. This court has original jurisdiction of this civil case of admiralty or maritime jurisdiction under 28 U.S.C. § 1333.

2.

Venue in this district is proper under 28 U.S.C. 1391(b) because all of the Defendants are subject to the personal jurisdiction of this Court and thus are deemed to reside in the Eastern District of Louisiana.

3.

Plaintiff, Nexen Petroleum U.S.A. Inc. ("Nexen") is a Delaware corporation with its principal place of business located in Dallas, Texas, and was at all material times the operator of the McIlhenny No. 1 well, owning 37.5% working interest in the McIlhenny No.1 well which was being drilled within the coastal waters of Louisiana in Vermilion Parish, Louisiana on or about June 11, 2007.

4.

Plaintiff, Winn Exploration Company, Inc. ("Winn") is a Texas corporation with its principal place of business located in Texas, and was at all material times a working 12 ½ % interest owner of the McIlhenny No.1 well.

5.

Plaintiff, Riverfront Exploration, LLC., is a Texas corporation with  its principal place of business located in Texas, and was at all material times a working 1.7 % interest owner of the McIlhenny No.1 well.

6.

Plaintiff Stephens Production Company, LLC is an Arkansas limited liability company with its principal place of business located in Arkansas, and was at all material times a working 12.5% interest owner of the McIlhenny No.1 well.

7.

Plaintiff Energy XXI Gulf Coast, Inc. is a Delaware corporation with its principal place of business located in Texas, and was at all material times a working 35% interest owner of the McIlhenny No.1 well.

8.

Plaintiff Loveless Asset Management LLC is a Nevada limited liability company with its principal place of business located in Texas, and was at all material times a working .8% interest owner of the McIlhenny No.1 well.

9.

Plaintiff, Coastal Drilling Company, LLC ("Coastal Drilling"), is a Texas limited liability company with its principal place of business located in Corpus Christi, Texas, and is the owner of a drilling barge Rig 21 (hereafter, "vessel"), a vessel that operates upon navigable waters of the United States for the purpose of transporting men, equipment and supplies to various drilling locations within the territorial waters of the United States for the drilling and completion of oil and gas wells, and which at all material times was under contract with Nexen for Nexen's use of Rig 21 in the drilling and completion of the McIlhenny No. 1.

10.

Plaintiff, National Union Fire Insurance Company of Pittsburg, Pennsylvania, is a Pennsylvania corporation and at all material times provided certain primary Control of Well & Extra Expenses/Rig Physical Damage Insurance coverage in favor of Winn, as set forth in Burke Daniels Policy No.BD-CJP-313.

11.

Plaintiff, Zurich American Insurance Company is a New York corporation with its principal place of business in Illinois, and at all material times provided certain insurance coverage in favor of Winn, as set forth in Burke Daniels Policy No.BD-CJP-313.

12.

Plaintiffs, Munich Re Capital, Ltd, Lloyd's Syndicate No. 457WTK and Lloyd's Syndicate No. 510KLN are underwriters and/or syndicates located in London, UK, and at all material times provided certain excess Control of Well & Extra Expenses/ Rig

Physical Damage insurance in favor of Winn Exploration Company, as set forth in Burke Daniels Cover Note No.A-0588-PKG, severally, each for its own proportionate share and not one for the other. Munich Re Capital, Ltd and Lloyd's Syndicate No. 457WTK are underwriters and/or syndicates located in London, UK, and at all material times provided certain excess Control of Well & Extra Expenses/ Rig Physical Damage insurance in favor of Riverfront Exploration, LLC. as set forth in Policy No.FCGM0740504, severally, each for its own proportionate share and not one for the other.

13.

Plaintiff ST. PAUL SURPLUS LINES INSURANCE COMPANY, subscriber to Policy No. MU05508234, as insurer of Loveless Asset Management LLC is a Delaware corporation with its principal place of business in Minnesota and at all material times provided certain insurance in favor of Loveless Asset Management LLC.

14.

Plaintiff ST. PAUL SURPLUS LINES INSURANCE COMPANY, subscriber to Policy No. MU05508674, as insurer of Stephens Production Company LLC, is a Delaware corporation with its principal place of business in Minnesota and at all material times provided certain insurance in favor of Stephens Production Company, LLC.

15.

Plaintiffs CERTAIN UNDERWRITERS AND COMPANIES AT LLOYD'S, LONDON, AND NATIONAL FIRE & MARINE INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY, AND LIBERTY MUTUAL INSURANCE COMPANY, all of whom severally subscribe, each for its own proportionate share and not one for the other to Policy No. PEO601206, Policy No. PEO601207, Policy No.

NRG913850-00, Policy No. 3H4679001, and Policy No. 92SRD102101, respectively, as insurers of Energy XXI Gulf Coast, Inc. are underwriters, syndicates and companies, and at all material times provided certain insurance in favor of Energy XXI Gulf Coast, Inc.

16.

Plaintiff, State National Insurance Company, is a foreign insurer which provided hull and machinery coverage to Coastal Drilling for Rig 21 and which has paid and will pay claims for physical damages to Rig 21 and other related expenses resulting from the blowout.

17.

Made defendant herein are the following:

A.     Allis-Chalmers Rental Services, LLC, f/k/a Allis-Chalmers Rental Services, Inc., f/k/a Allis-Chalmers Rental Tools, Inc. and f/k/a Oil & Gas Rental Services, Inc., (hereinafter referred to as "Allis-Chalmers"), upon information and belief a Texas corporation with offices in Amelia, Louisiana, engaged in the business of providing rental equipment for drilling operations, such as variable bore rams, hydril valves, blowout preventers and annular preventers. It rented and distributed equipment intended for use by members of the general public, and thereby introduced into the stream of commerce equipment, that at all times material, represented a suitable for use on the well.

B.     Allis-Chalmers Energy, Inc., (hereinafter referred to as "Allis-Chalmers"), upon information and belief a Delaware corporation with offices in Louisiana, engaged in the business of providing rental equipment for drilling operations, such as variable bore rams, hydril valves, blowout preventers and annular preventers.   It rented and distributed

equipment intended for use by members of the general public, and thereby introduced into the stream of commerce equipment, that at all times material, it represented a suitable for use on the well.

   C. Cameron International Corporation f/k/a Cooper Cameron Corporation Cooper Oil Tool Division, (hereinafter referred to as "Cameron"), upon information and belief, a Delaware corporation with offices in Louisiana.  It was at all material times engaged in the business of designing, manufacturing, distributing and/or selling for intended use by members of the general public, and thereby introduced into the stream of commerce pipe ram blowout preventers and component parts, that it represented were suitable for this industrial application;

   D. Cameron Elastomer Technology, a division of Cameron International Corporation (hereinafter referred to as "Cameron"), upon information and belief is doing business in Texas and Louisiana under the entity, Cameron International Corporation. It was at all material times engaged in the business of designing, manufacturing, distributing and/or selling for intended use by members of the general public, and thereby introduced into the stream of commerce pipe ram blowout preventers and component parts, that it represented were suitable for this industrial application;

   E. Cameron Controls, a division of Cameron International Corporation (hereinafter referred to as "Cameron"), upon information and belief is doing business in Texas and Louisiana under the entity, Cameron International Corporation.  It was at all material times engaged in the business of designing, manufacturing, distributing and/or selling for intended use by members of the general public, and thereby introduced into

the stream of commerce pipe ram blowout preventers and component parts, that it represented were suitable for this industrial application.

F.      Cameron France, S.A., operates as a subsidiary of Cooper Cameron Holding (U.K.) Ltd.  It was at all material times engaged in the business of designing, manufacturing, distributing and/or selling for intended use by members of the general public, and thereby introduced into the stream of commerce pipe ram blowout preventers and component parts, that it represented were suitable for this industrial application.

G.      Cooper Cameron Holding (U.K.) Ltd.  was at all material times engaged in the business of designing, manufacturing, distributing and/or selling for intended use by members of the general public, and thereby introduced into the stream of commerce pipe ram blowout preventers and component parts, that it represented were suitable for this industrial application.

H.      Drilling Systems, Cameron, a division of Cameron International Corporation (hereinafter referred to as "Cameron"), upon information and belief is doing business in Texas and Louisiana under the entity, Cameron International Corporation.  It was at all material times engaged in the business of designing, manufacturing, distributing and/or selling for intended use by members of the general public, and thereby introduced into the stream of commerce pipe ram blowout preventers and component parts, that it represented were suitable for this industrial application.

I.      Hydril Company, LP, (hereinafter referred to as "Hydril"), upon information and belief a limited partnership organized under the laws of the State of Delaware, doing business in and with offices in Louisiana. It was at all material times engaged in the business of designing, manufacturing, distributing and/or selling for

intended use by consumers, and thereby introduced into the stream of commerce an annular blowout preventer, that it represented was suitable for this industrial application.

J.      Hydril General LLC is a general partner of Hydril Company, LP, (hereinafter referred to as "Hydril"), upon information and belief is doing business in Louisiana and Texas. It was at all material times engaged in the business of designing, manufacturing, distributing and/or selling for intended use by consumers, and thereby introduced into the stream of commerce an annular blowout preventer, that it represented was suitable for this industrial application.

K.      Tri City Pipe & Machine, LLC, (hereinafter referred to as "Tri City"), upon information and belief is a Louisiana Limited Liability Corporation organized under the laws of the State of Louisiana doing business in Louisiana.  It is engaged in the business of machining oilfield equipment.

18.

On or about June 11, 2007, Coastal was drilling the McIlhenny No.1 well in Vermilion Parish, Louisiana pursuant to contract with Nexen.  Nexen entered into a Daywork Drilling Contract with Coastal for the use of Rig 21 in the drilling and completion of the McIlhenny No. 1.  The surface location of the McIlhenny No. 1 is situated within a navigable waterway in Vermilion Parish, Louisiana.  The McIlhenny No. 1 well site is subject to the ebb and flow of the tide.  Rig 21 is a special purpose vessel that operates upon navigable waters of the United States for the purpose of transporting men, equipment and supplies to various drilling locations within the territorial waters of the United States.  Once on a drilling location, the equipment and

appurtenances attached to and a part of the vessel are utilized in the drilling and completion of oil and gas wells within the territorial waters of the United States.

19.

As of June 11, 2007, the well had been drilled to a depth of 20,406 feet, without incident. That morning, the well began to show an increase of gas units in the return drilling fluid, indicating to those present that gas had been encountered which would need to be circulated out before drilling operations could resume.

20.

In preparation to circulate out the gas, the annular blowout preventer was closed around the drill pipe in the hole in an effort to seal off or prevent gas from the well. The annular blowout preventer was manufactured by defendant Hydril and rented to Nexen by Allis-Chalmers and had a working pressure rating up to 5000psi. Nexen entered into the agreement with Allis-Chalmers in reliance upon Allis-Chalmers' express and/or implied warranties that it would perform all services in a good and workmanlike manner.

21.

After a short period of time, the annular blowout preventer began to leak and was unable to prevent the flow from the well. Hydril designed, manufactured, marketed, sold and distributed the annular blowout preventer and placed it into the stream of commerce by selling it to Allis-Chalmers, who rented it to Nexen. At all times Hydril held itself out to the general public as having knowledge or skill peculiar to the business of designing, manufacturing and marketing annular blowout preventers.

22.

Once the annular blowout preventer leaked, the upper pipe ram blowout preventer was closed. This blowout preventer was manufactured by defendant Cameron and rented to Nexen by Allis-Chalmers. The upper pipe ram blowout preventer was represented by Cameron and Allis-Chalmers to hold up to 10,000psi without leaking. Cameron designed, manufactured, marketed, sold and distributed the blowout preventer and placed it into the stream of commerce by selling it to Allis-Chalmers. At all times, Cameron and Allis-Chalmers held themselves out to the general public as having knowledge or skill peculiar to the business of designing, manufacturing and marketing blowout preventers.

23.

Prior to the blowout, the annular blowout preventer and ram blowout preventers and component parts, after being conveyed to Nexen, were loaded aboard barges and transported to the well site where they were offloaded onto the drilling vessel and eventually installed into the well control system.

24.

Upon closing of the upper pipe ram blowout preventer, it was observed that the upper pipe ram blowout preventer was leaking and unable to stop the flow from the well. In response to the failure of the upper pipe ram, the lower pipe ram blowout preventer was closed. Again, this blowout preventer was originally manufactured by defendant Cameron and was rented to Nexen by Allis-Chalmers, and was rated to close against working pressure up to 10,000psi.

25.

Shortly after the lower pipe ram blowout preventer was closed, the lower pipe ram blowout preventer began to leak and was not able to prevent the well from flowing. After additional measures to control the flow from the well were unsuccessful, all members of the crew of Rig 21 and third party personnel disembarked from the vessel and were evacuated by crew boat.

26.

As a result of this incident, the well was able to flow uncontrolled until the well bridged off and flow ceased. Thereafter, Nexen hired Wild Well Control to come on location to begin the process of killing the well. The blowout event caused a variety of damages and expenses, including, but not limited to, the following:

a.      Environmental pollution to the surrounding area and waters and clean up expenses;

b.      Damages to the well bore;

c.      Damages to equipment in the hole;

d.      Cost of redrill of the well;

e.      Cost of control of the well;

f.      Cost of recovery of well equipment in the hole;

g.      Loss of use of the vessel, Rig 21,  and related profits;

h.      Surveys and inspections;

i.      Increased cost of royalty and bonus payments;

j.      Damages to the vessel and related costs of cleaning and repair.

27.

As a result of the blowout, all operations were suspended and the vessel crew and third party personnel were evacuated. The blowout resulted in all operational areas of Rig 21 being covered with drilling fluids and well ejecta which caused damage to much of the operational equipment, rendering Rig 21 incapable of continued service and operations. After a preliminary clean up at the well site, Rig 21 was towed to various facilities for further cleaning and repairs of all operational equipment. During the course of cleaning and repairs, Rig 21 was taken out of maritime commerce and was not capable of being placed into commerce and was unable to perform its function as a special purpose vessel engaged in the transportation of men, equipment and supplies and the drilling oil wells in inland navigable waterways. During the period of time that Rig 21 was taken out of maritime commerce, Coastal Drilling lost the opportunity to charter and hire its vessel under terms and conditions that Coastal Drilling would have otherwise been able to charter and hire its vessel had the blowout and subsequent damage to Rig 21 not occurred. Further, the damages caused by the blowout caused a navigable waterway to be sealed off.

28.

The incident also resulted in the discharge of oil based drilling fluids and other substances in and onto the waters surrounding Rig 21 and the well site. Nexen, as the designated operator of the McIlhenny No. 1, secured the services of a fast response oil spill cleanup vessel to assist in the containment of the drilling fluids and other substances discharged onto the waters surrounding the vessel and the well site.

29.

At all times material, Allis-Chalmers, Cameron and Hydril impliedly warranted to Plaintiff and the general public that the annular and/or ram blowout preventers were (i) of merchantable quality, and (ii) safe and fit for their intended purpose when used in ordinary circumstances and ways.

30.

At all material times, Allis-Chalmers, Cameron and Hydril knew or reasonably should have known the purpose for which Plaintiff obtained the blowout preventer units.

31.

At all material times, Plaintiffs relied on the skill and judgment of Allis-Chalmers to select and furnish the blowout preventers as a suitable product for installation and use on the well.  At all times material, Allis-Chalmers had reason to know that Plaintiff relied on Allis-Chalmers' skill and judgment to select and furnish the blowout preventers as a suitable product for installation and use on the well.

32.

Upon information and belief, the highest well pressures recorded at the time of the kick and before the blowout and subsequent abandonment of the rig were substantially less than the working rated pressures of the annular and ram blowout preventers at the time of their respective failures.

33.

The upper and lower pipe ram blowout preventers consisted in part of a set of metal rams on which a rubber sealing element is affixed.  As these rams make contact with the drill pipe in the hole, they were designed to close tightly around the pipe and

prevent any gas or drilling fluids from passing the seal.  The rams in this case were known as variable bore rams because they were manufactured to be used to work on drill pipe of variable diameter.

34.

Upon information and belief, the variable bore rams which were used on the upper and lower pipe rams were rented by defendant Allis-Chalmers to Nexen for use on the McIlhenny No.1 well.  These rams were represented to be of the variable bore ram type, and capable for use on drill pipe ranging from 3 ½ to 5 7/8" in diameter.  The drill pipe in use at the time of the blowout was 5 7/8" in diameter.

35.

Upon information and belief, the packers and/or sealing elements of the ram preventers were composed of nitrile rubber and were manufactured by or for Cameron according to Cameron specifications.  These packers and/or sealing elements were then sold by Cameron to Allis-Chalmers who then sold them to Nexen for use on the McIlhenny No.1 well.  Upon information and belief, Allis-Chalmers physically installed the packers into the pipe rams before the rams were delivered to the well site.

36.

Subsequent to the blowout, it was discovered through inspection of the rams that all of the packers were compromised and had been washed away and had failed to control the well flow. Further investigation disclosed Allis-Chalmers and/or its predecessor in interest had arranged to have the rams modified from their original size of 2 7/8"-5" to 3 ½- 5 7/8".  Upon information and belief these particular rams were approximately 10 years old at the time of the blowout and had been modified approximately 14 months

before the blowout in April, 2006, by defendant, Tri City.   Tri City was, upon information and belief an approved vendor for Cameron and/or Allis-Chalmers.

37.

Hydril did not warn Plaintiffs in any way of any defect of the annular blowout preventer.  It is believed that the defects existed when the annular blowout preventer left Hydril's control.

38.

Neither Allis-Chalmers, Cameron nor Tri City warned Plaintiffs in any way of any defect of the blowout preventers or their component parts.  It is believed that the defects existed:

a. when the blowout preventers left Cameron's control; and/or

b. when the blowout preventers left Allis-Chalmers' control; and/or

c. when the blowout preventers left Tri City's control; and/or

d. when Allis-Chalmers installed the packers in the pipe rams.

Upon information and belief the aforementioned defects:

a. Rendered the blowout preventers unsafe and/or unfit for its intended purpose; and/or

b. Caused the blowout preventers to fail to conform to the product design and specifications of other blowout preventers; and/or

c. Caused the blowout preventers to fail to conform to the quality, nature and/or characteristics previously warranted by Allis-Chalmers, Hydril, Tri City and Cameron; and/or

d. Constituted a manufacturing, design and/or marketing defect.

39.

At all times material, a safer design existed for the blowout preventers. That safer, alternative design would have prevented the defect and/or significantly reduced the risk of seal failure and/or pipe ram failure, without impairing the utility of the blowout preventers. That safer alternative design was economically and technologically feasible by application of reasonably achievable scientific knowledge existing when Cameron and Hydril manufactured the blowout preventers.

40.

By their acts and/or omissions, and contrary to their prior, express and/or implied representations and/or promises to Plaintiffs, Allis-Chalmers, Hydril, Tri City and Cameron failed to perform the agreed installation/rental services in a good and workmanlike manner. Plaintiffs relied upon those representations to their detriment.

41.

Plaintiffs allege breach of contract with Defendant Allis-Chalmers. At all times material, Plaintiffs performed all of the conditions of its agreements with Allis-Chalmers. At all times material, Plaintiffs mitigated their damages in a commercially reasonably manner. All conditions precedent necessary to maintain this action have been performed or have occurred.

42.

Each of the described acts and omissions of Allis-Chalmers, Hydril, Tri City and Cameron and/or the defects of the blowout preventers constituted negligence, breach of contract, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, breach of express warranty and a basis for

strict products liability, and was a proximate and producing cause of the seal failure/blowout preventer failure/ pipe ram failure and of actual, incidental and consequential damages to Plaintiffs.

43.

Plaintiffs cannot more specifically allege Cameron, Hydril, Tri City and Allis-Chalmers' respective acts and/or omissions constituting negligent manufacture, design and/or marketing because additional facts peculiarly are within their knowledge.

44.

In the alternative, to the extent that state law is applicable or supplementary to maritime law, Plaintiffs claim relief under the Louisiana Products Liability Act and/or the Louisiana law of Redhibition. The annular preventer manufactured by Hydril and rented to Nexen was a product within the meaning of the Louisiana Products Liability Act, La. R.S. 9:2800.53 and Hydril and Allis-Chalmers were manufacturers within the definition of that statute. Further, the Hydril annular preventer was unreasonably dangerous within the meaning of La. R.S 9:2800.54 et seq. in design, in construction and/or composition, because of lack of adequate warning and because of failure to conform to express warranties of the manufacturers. Therefore, the defendants are liable for all damages proximately caused by the unreasonably dangerous condition.

45.

The upper and lower pipe ram preventers manufactured by Cameron, and remachined by Allis-Chalmers, Tri-City Pipe and/or Cameron were products within the meaning of the Louisiana Products Liability Act, La. R.S. 9:2800.53 and Cameron, Allis-Chalmers and Tri-City Pipe were manufacturers within the definition of that statute.

Further, the upper and lower pipe rams were unreasonably dangerous within the meaning of La. R.S. 9:2800.54 et seq., in design, in construction and/or composition, because of lack of adequate warning and failure to conform to express warranties of the manufacturers. Therefore, the defendants are liable for all damages proximately caused by the unreasonably dangerous condition.

46.

The annular preventer contained a redhibitory vice or defect which rendered it unfit for its intended purpose. Upon information and belief, Hydril and Allis-Chalmers knew or may be presumed to have known of the vice or defect. Therefore, Plaintiffs are entitled to recover, in addition to all damages recoverable under the Louisiana Products Liability Act, consequential damages, costs and attorneys fees incurred in the prosecution of this action.

47.

The upper and lower ram preventers contained redhibitory vices or defects which rendered them unfit for their intended purposes. Upon information and belief, Cameron, Allis-Chalmers and Tri-City Pipe knew or may be presumed to have known of the vice or defect. Therefore, Plaintiffs are entitled to recover, in addition to all damages recoverable under the Louisiana Products Liability Act, consequential damages, costs and attorney's fees incurred in the prosecution of this action.

48.

The failure of the annular and pipe ram blowout preventers was due, in whole or in part, to one or more of the following non-exclusive causes:

a.    Inadequate or improper machining of the variable rams, resulting in incorrect tolerances which caused the rams not to seal properly;

b.    Failure of the rubber sealing elements to perform to the standard advertised by their respective manufacturers;

c.    Improper manufacturing and/or installation of the preventers and the sealing elements contained in them;

d.    Defective design of the blowout preventers;

e.    Failure to provide proper information to the purchaser of the preventers and sealing elements as to the working characteristics or limitations of said preventers and/or sealing elements;

f.    Furnishing of the wrong or substandard sealing elements for installation in the blowout preventers;

g.    Such other particular acts, omissions or fault as will be proved at trial.

49.

In the alternative, Plaintiffs are entitled to an inference that the harm it suffered was caused by the negligence, strict liability and/or other fault under the doctrine of *Res Ipsa Loquitur*. Plaintiffs are further entitled to an inference that the harm sustained was caused by a defect in the annular and/or ram preventers and/or their component parts, including the rams and/or seals existing at the time of sale or distribution, without proof of a specific defect, because the harm was of a kind that ordinarily occurs as a result of a product defect and was not the result of causes other than the product defect existing at the time of sale or distribution.

50.

A.     As a working interest owner, Winn was damaged to the extent of all the foregoing described damages to the well to the extent of its 12 ½ % working interest.

B.     As a working interest owner, Riverfront Exploration was damaged to the extent of all the foregoing described damages to the well to the extent of its 1.7% working interest.

C.     As a working interest owner, Energy XXI was damaged to the extent of all of the foregoing described damages to the well to the extent of its 35% working interest.

D.     As a working interest owner, Stephens Production Company, LLC was damaged to the extent of all of the foregoing described damages to the well to the extent of its 12.5% working interest.

E.     As a working interest owner, Loveless Asset Management, LLC, was damaged to the extent of all of the foregoing described damages to the well to the extent of its .8% working interest.

F.     As a working interest owner, Nexen was damaged to the extent of all of the foregoing described damages to the well to the extent of its 37.5% working interest.

G.     As the owner/operator of Rig 21, Coastal is entitled to all damages described herein.

51.

Plaintiffs National Union and Zurich issued insurance policies covering Winn for losses arising from damage to the McIlhenny No. 1 well up to the limits of their policies, subject to applicable deductibles and scaled to Winn's 12 ½% interest.  As such, these

Plaintiffs are fully subrogated to Winn's rights against the defendants up to the amount of their respective payments.

52.

Plaintiffs Munich Re Capital, Ltd, Lloyd's Syndicate No. 457WTK and Lloyd's Syndicate No. 510KLN issued insurance policies covering Winn for losses arising from damage to the McIlhenny No. 1 well up to the limits of their policies, subject to applicable deductibles and scaled to Winn's 12.5% interest. As such, these Plaintiffs are fully subrogated to Winn's rights against the defendants up to the amount of their respective payments.

53.

Plaintiffs Munich Re Capital, Ltd, Lloyd's Syndicate No. 457WTK issued insurance policies covering Riverfront Exploration, LLC for losses arising from damage to the McIlhenny #1 well up to the limits of their policies, subject to applicable deductibles and scaled to Riverfront's 1.7% interest. As such, these Plaintiffs are fully subrogated to Riverfront's rights against the defendants up to the amount of their respective payments.

54.

Plaintiff ST. PAUL SURPLUS LINES INSURANCE COMPANY, issued insurance policies covering Loveless Asset Management LLC, for losses arising from damage to the McIlhenny #1 well up to the limits of its policies, subject to applicable deductibles and scaled to Loveless Asset Management LLC's .8% interest. As such, this Plaintiff is fully subrogated to Loveless Asset Management LLC's rights against the defendants up to the amount of its respective payments.

55.

Plaintiff ST. PAUL SURPLUS LINES INSURANCE COMPANY, issued insurance policies covering Stephens Production Company LLC for losses arising from damage to the McIlhenny #1 well up to the limits of its policies, subject to applicable deductibles and scaled to Stephens Production Company LLC's 12.5 % interest. As such, this Plaintiff is fully subrogated to Stephens Production Company LLC's rights against the defendants up to the amount of its respective payments.

56.

Plaintiffs CERTAIN UNDERWRITERS AND COMPANIES AT LLOYD'S, LONDON, AND NATIONAL FIRE & MARINE INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY, AND LIBERTY MUTUAL INSURANCE COMPANY, issued insurance policies covering Energy XXI Gulf Coast, Inc. for losses arising from damage to the McIlhenny #1 well up to the limits of their policies, subject to applicable deductibles and scaled to Energy XXI's 35 % interest. As such, these Plaintiffs are fully subrogated to Energy XXI's rights against the defendants up to the amount of their respective payments.

57.

Plaintiff, State National Insurance Company, is a foreign insurer which provided hull and machinery coverage on Rig 21 to Coastal Drilling and which has paid and will pay claims for physical damages to Rig 21 and other related expenses resulting from the blowout. State National Insurance Company is fully subrogated to Coastal Drilling's rights, claims and causes of action against the defendants up to the amount of its respective payments.

58.

Plaintiff brings this action for themselves and/or as agent and/or trustee for all persons or entities including any insurers or underwriters that are or become interested in the well blowout and/or Plaintiffs' damages

PRAYER

Wherefore, Plaintiffs pray that, after due proceedings, there be judgment in their favor and against defendants jointly and severally for the full amount of all damages proven at trial, together with interest, costs, and all other relief to which Plaintiffs may be entitled and this Court competent to grant.

Respectfully submitted,

JON W. WISE (#2192)
KIM E. CONKEY (pro hac vice)
**Fowler Rodriguez Valdes-Fauli**
400 Poydras Street, 30th Floor
New Orleans, LA  70130
Telephone: (504) 523-2600

*Attorneys for Winn Exploration Company, Inc., Riverfront Exploration, LLC, National Union Fire Insurance Company of Pittsburg, Pennsylvania, Zurich American Insurance Company Munich Re Capital, Ltd, Lloyd's Syndicate No. 457WTK, Lloyd's Syndicate No. 510KLN, Petitioners*

**WESTMORELAND HALL, P.C.**

By: _____

STEPHANIE E. RENNELL (#26483)
srennell@westmorelandhall.com
2800 Post Oak Boulevard, 64th Floor
Houston, Texas 77056
Telephone: (713) 871-9000
Facsimile: (713) 871-8962

*Attorneys for St. Paul Surplus Lines
Insurance Company, Certain
Underwriters and Companies at Lloyd's,
London, and National Fire & Marine
Insurance Company, Zurich American
Insurance Company, and Liberty Mutual
Insurance Company, Stephens
Production Company, LLC, Energy XXI
Gulf Coast, Inc., and Loveless Asset
Management LLC*

Of Counsel:
George H. Lugrin, IV (*pending pro hac vice*)
Texas State Bar No. 00787930
Allyson L. Wilkinson  (*pending pro hac vice*)
Texas State Bar No. 24010481
**WESTMORELAND HALL, P.C.**
2800 Post Oak Blvd., 64th Floor
Houston, Texas 77056
Telephone: (713) 871-9000
Facsimile: (713) 871-8962

LISKOW & LEWIS, APLC

BY: _____

LAWRENCE P. SIMON, JR. T.A. (#7709)
lpsimon@liskow.com
PAUL MATTHEW JONES (#19641)
pmjones@liskow.com
JASON P. BERGERON (#26197)
jpbergeron@liskow.com
822 Harding Street
P.O. Box 52008
Lafayette, Louisiana 70505
Tel: (337) 232-7424
Fax: (337) 267-2399

*Attorneys for Nexen Petroleum U.S.A. Inc.*

PUGH, ACCARDO, HAAS & RADECKER, L.L.C.

BY: _____
FREDERICK T. HAAS, III, T.A.
(#6393)
fhaas@pugh-law.com
SCOTT R. HYMEL (#26344)
shymel@pugh-law.com
WILLIAM M. DAVIS (#30813)
wdavis@pugh-law.com
Suite 2000 Energy Centre
1100 Poydras Street
New Orleans, La. 70163-2000
Tel: (504) 799-4500
Fax: (504) 799-4520
*Attorneys for Coastal Drilling
Company, LLC and State National*

**Please withhold Service.**